UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61133-CIV-COHN/SELTZER

CUNEYT DURU, an individual,

   Plaintiff,

vs.

HSBC BANK NEVADA, N.A.,
f/k/a HOUSEHOLD BANK (SB), N.A.,

   Defendant.
_____/

**FINAL ORDER OF DISMISSAL**

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss Second Amended Complaint [DE 32]. The Court has carefully considered the motion, response [DE 36] and reply [DE 37], and is otherwise fully advised in the premises.

I.  BACKGROUND

Plaintiff Cuneyt Duru ("Plaintiff") filed this action against HSBC Bank ("HSBC" or "Defendant"), his credit card issuer, because HSBC computed his daily periodic interest rate on his credit card based upon 365 days during Leap Year 2004 and 2008, despite there being 366 days in a leap year. Plaintiff seeks to bring his claims on behalf of two nationwide classes, one for the year 2004 and one for the year 2008. Plaintiff's specific claims are for injunctive relief (Count I), for breach of the implied covenant of good faith and fair dealing (Counts II and V), and for breach of an implied fiduciary duty and/or confidential relationship (Counts III, IV, VI and VII).[1]

---

[1] These claims are similar to those raised and dismissed in Renslow, et al. v. Capital One Bank (USA), N.A., Case No. 08-60964-Civ (D.E. 56, January 8, 2009) (Altonaga, J.). This Court relies in part upon that decision in reaching its conclusion in

Plaintiff has been an HSBC card holder since 1993. Sec. Am. Compl. ¶ 13. Each month Plaintiff received a monthly billing statement containing representations of the "daily periodic rate" being charged for the billing cycle, along with the "nominal annual percentage rate" ("the nominal APR"), the "average daily balance," and the effective "APR." Id., ¶ 16. The daily periodic rate is determined by dividing the nominal APR for the respective billing period by 365, the number of days in a regular calendar year. Id., ¶ 18. In calculating the total finance charge, HSBC would multiply the daily periodic rate by the average daily balance for purchases, cash advances and prior purchases, and would then multiply the result by the number of days in the billing cycle. Id., ¶ 19. During 2004 and 2008, leap years that contained 366 days, HSBC "willfully determined the daily periodic rate for Class Members in 2008 and 2004 by dividing any given APR by 365 rather than 366." Id., ¶ 21. This resulted in an "inflated daily periodic interest rate" to calculate the total interest charges for that billing cycle. Id. Plaintiff alleges that this practice of using 365 days during leap years gives rise to their claims in this action. However, the parties' contract (the cardholder agreement), accepted by Plaintiff through his use of the card, simply states that "the Daily Periodic Rate is the corresponding APR divided by 365." Cardmember Agreement, Exhibit A to Defendant's motion at p. 2 of 5 [DE 32-2].[2]

---

this case, although Renslow was decided under Virginia law.

[2] The Cardmember Agreement is specifically referenced numerous times in the Complaint. Sec. Am. Compl. ¶ 61 *et seq.* The Court may consider documents referred to by a plaintiff in a complaint which are central to the plaintiff's claim (and are undisputed as to authenticity) for purposes of a motion to dismiss without conversion of the motion to dismiss into a motion for summary judgment. Day v. Taylor, 400 F.3d

Defendant has moved to dismiss the claims for failure to state a claim. Plaintiff opposes the motion.

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

Until the Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001).  However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  550 U.S. at 555.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.  Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

---

1272, 1276 (11th Cir. 2005).

3

### B.  Injunctive Relief Claim

Plaintiff's first claim for "Injunctive Relief" fails to state a claim because:

> any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. "There is no such thing as a suit for a traditional injunction in the abstract.  For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim)." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir.2004).  An injunction is a "remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed-if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." Id. at 1098.

Alabama v. U.S. Army Corps of Engineers, 424 F.3d 1117, 1127 (11th Cir. 2005).

Defendants assert that Plaintiff has not stated the cause of action upon which their injunction relief is to be based within Count I of the Second Amended Complaint.  In response, Plaintiff not only fails to state which claim their prayer for injunctive relief is based upon, but argues that its claim for "injunctive relief" is pled in the alternative to its substantive claims.  Plaintiff's Response at 6.  The Court concludes that Plaintiff has failed to state a claim in Count I of his Second Amended Complaint.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing[3]

Defendant's primary argument in support of dismissal is that the parties' contract specifically defined the daily periodic rate as the APR divided by 365, without reference

---

[3] Defendant asserts that this dispute is governed by Nevada law, but that Florida law would lead to the same result.  Plaintiff does not directly address this choice of law issue, but does cite to several Nevada decisions.  Thus, the Court will turn to Nevada case law to resolve the motion to dismiss.

to the number of days in a particular year.  Plaintiff asserts that a reasonable person would assume that the daily periodic rate would be lower in a leap year that contains 366 days.  In a decision granting a motion to dismiss where a debtor sued a bank alleging the same state law claims as in the present case, a United States District Court Judge concluded that there was no special relationship between the debtor and creditor or a bank and its loan customers sufficient to state such a claim.  <u>Cascade Investments, Inc. v. Bank of America, N.A.</u>, 2000 WL 1842945 (D.Nev. Sept. 29, 2000). The district court in <u>Cascade</u> noted that Nevada law limited this claim to "rare and exceptional cases" involving a special element of reliance or special relationship.  <u>Id.</u>, citing <u>Great American Ins. Co. v. General Builders, Inc.</u>, 934 P.2d 257, 263 (Nev. 1997) (further Nevada cases cited therein).

 Plaintiff is asking this Court to find a definite contract term "ambivalent" to create a tort claim.  Plaintiff's Response at 3.  The Cardmember Agreement specifically states that "The Daily Periodic Rate is the corresponding APR divided by 365."  Exhibit A to Defendant's Motion.  This term is not ambiguous, though Plaintiff asserts that some customers may have assumed that in leap years the APR is divided by 366.  This assumption on the part of a card user does not support a viable claim for breach of the covenant of good faith and fair dealing.

 Plaintiff's citations to Nevada law do not change this conclusion.  In <u>D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.</u>, the court first found that the dividend rate calculation in the parties' agreement was not ambiguous.  570 F.Supp.2d 1262, 1269 (D.Nev. 2008).  Plaintiff cited the court's next statement that Nevada law provides that if

5

a contract is silent as to whether interest is simple or compound, there is a presumption that the interest is simple, though a court may consider parol evidence in resolving a dispute.  Id.  However, the court then concluded that the agreement before it involved dividends, not interest, and was not ambiguous as to the calculation.  Thus, the portion cited by Plaintiff regarding parol evidence is mere dicta.

The actual holding of Shaw supports Defendant's argument in this case.  If the Cardmember Agreement in this case had stated that the daily periodic rate was to be determined by the number of days in a year, and Defendant had used 365 days during a leap year, then perhaps Plaintiff could state a claim.  However, by specifying 365 days, the parties' agreement has no ambiguity in any calendar year.

Plaintiff also cites to Old Republic Ins. Co. v. Jenson, wherein the court followed the standard maxim that because insurance contracts are contracts of adhesion, ambiguities in such contracts are construed against the insurer.  276 F.Supp.2d 1097, 1101 (D.Nev. 2003).  Plaintiff argues that the Cardmember Agreement is also a contract of adhesion.  While this statement is true, there still is no ambiguity as to the calculation of the daily periodic rate.

The Court therefore concludes that Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing under Nevada law.

### D.  Breach of Implied Fiduciary Duty or Confidential Relationship

Turning next to Plaintiff's claims for breach of an implied fiduciary duty, Nevada law recognizes that "fiduciary duties arise as a matter of law in certain categories of

6

relationships." Giles v. General Motors Acceptance Corp., 494 F.3d 865, 881 (9th Cir. 2007) (citing Nevada cases).  These recognized relationships include insurers and insureds, attorney and client, spouses, and corporate officers and corporation.  Id.  Outside these categories, a duty can be owed in "confidential relationships," where "one party gains the confidence of the other and purports to act or advise with the other's interests in mind."  Id., quoting Perry v. Jordan, 900 P.2d 335, 338 (Nev. 1995).  Defendant argues that Plaintiff cannot show that HSBC ever purported to act with Plaintiff's interest in mind.  Rather, although HSBC had greater control over the details of the parties' contractual obligations, a credit card issuer cannot be said to act with a customer's interest in mind so as to create a confidential relationship.

Nevada law also recognizes "special relationships," wherein a party "must show that (1) the conditions would cause a reasonable person to impart special confidence, and (2) the trusted party reasonably should have known of that confidence."  Giles, 494 F.3d at 881, quoting Mckintosh v. Cal. Fed. Sav. & Loan Ass'n, 935 P.2d 1154, 1160 (Nev. 1997).  Plaintiff relies upon this case for the proposition that the existence of a special relationship is a factual question.  McKintosh, 935 F.2d at 1160.  The Ninth Circuit in Giles affirmed the district court's decision on summary judgment that no fiduciary or special relationship existed between a car dealer and its lender, a relationship far more fact intensive than the simple credit card issuer and consumer credit card holder in the case at bar.  Moreover, Plaintiff cannot credibly allege that a reasonable person would impart special confidence to the bank that issued a credit card, nor would a bank reasonably have known of that confidence.

The decision in Cascade also addressed the lack of a special relationship between a debtor and creditor or a bank and its loan customers sufficient to state a claim for breach of a fiduciary duty.  Although the court cited to cases from outside of Nevada, this decision is the closest factual case from Nevada cited by either side in the case at bar.  The loans at issue in Cascade arose out of a thirteen year banking relationship between the parties.  The Nevada court concluded that Plaintiffs failed to establish the relationship was more than just "a normal lender-borrower relationship." 2008 WL 1842945 at *2.  Although Plaintiff in the present case is apparently less sophisticated than the borrower in Cascade, and has held the credit card since 1993, this Court also concludes that the relationship alleged in the Second Amended Complaint does not rise to the level of a fiduciary or confidential relationship.[4]

### III.  CONCLUSION

The Court need not address issues of federal preemption or the economic loss rule as to either class, nor the statute of limitations as to the 2004 class.  As Plaintiff has already had two opportunities to file an amended complaint, further leave to amend his pleadings will not be granted.

---

[4] This same conclusion would be reached under Florida law as to the Second Amended Complaint.  In Lanz v. Resolution Trust Corp., 764 F.Supp. 176, 179 (S.D.Fla. 1991), the court concluded that absent evidence that a creditor recognized, accepted or undertook the duties of a fiduciary, such a relationship would not be presumed.  While Plaintiff has presented Florida decisions where an exception was made to the general rule that there is no fiduciary relationship between lenders and creditors, e.g. Captial Bank v. MVB, Inc., 644 So.2d 515, 518-19 (Fla.Dist.Ct.App. 1994), in the case at bar no extra services, control or non-typical transactions were involved.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Second Amended Complaint [DE 32] is hereby **GRANTED**;

2. The Second Amended Complaint is hereby **DISMISSED** for failure to state a claim;

3. The Clerk may close this case and deny any pending motions as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 20th day of May, 2009.

                                                                               *James I. Cohn*
                                                                               JAMES I. COHN
                                                                               United States District Judge

copies to:

counsel of record